COOPER INDUSTRIES, INC., Cooper CPS Corporation, Cooper Power Systems, Inc., McGraw Edison Company, and Cooper Turbocompressor, Inc., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9406–TA–00166.

Tax Court of Indiana.

Nov. 27, 1996.

Larry J. Stroble, Barnes & Thornburg, Indianapolis, for Petitioners.

Pamela Carter, Attorney General of Indiana and Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Petitioners are a group of corporations operating as a unitary business. In 1988, the common parent of the group filed its federal income tax return on a consolidated basis. For purposes of Indiana income taxes, however, the parent and those member corporations with ties to Indiana used the combined reporting method. Also in 1988, the parent sold two subsidiaries and, as required by federal regulations, included the "excess loss account" income associated with those entities in its federal consolidated taxable income. Inasmuch as Indiana income taxes begin with the taxpayer's federal taxable income, the Department decided that Petitioners were required to include the excess loss account income in Indiana adjusted gross income. Petitioners challenge that determination. This Court holds that excess loss

account income from a consolidated federal return does not constitute income for the purposes of a combined Indiana return.

## STATEMENT OF FACTS AND BACKGROUND

The facts are not in dispute. Petitioners are Cooper Industries, Inc. and its domestic subsidiaries, Cooper CPS Corporation, Cooper Power Systems, Inc., McGraw Edison Company, and Cooper Turbocompressor, Inc. (collectively, the "Affiliates").[1] For the years at issue, these companies were engaged together in the business of manufacturing, distributing, and marketing various electrical, automotive, and industrial products and equipment. The enterprise also involved two oil rigs, incorporated as Petdrill, Inc. and Seadrill, Inc. (collectively, the "Rig Companies"), operating in the Gulf of Mexico. Trans. at 4. Both Petdrill and Seadrill recorded net operating losses for most of the years relevant to this appeal. Stip. at 5.

Beginning in 1985 and continuing through 1988, Cooper Industries filed its Indiana income tax returns on a combined basis, joined by the Affiliates, the Rig Companies, and

approximately thirty other related companies. *Id.* at 2–4, 8. The combined reporting method is an alternative to Indiana's standard three-factor apportionment scheme. By this method, a group of corporations operating as a unitary business may aggregate their earnings before apportionment.[2] The parties stipulated that Petdrill and Seadrill were included in Petitioners' combined filings although they did not file individual Indiana returns. *Id.* at 8.

At the same time Petitioners were filing on a combined basis in Indiana, Cooper Industries was filing on a consolidated basis for federal tax purposes.[3] The Internal Revenue Code permits affiliated domestic corporations satisfying certain rules of common ownership to calculate income and tax liability as a single entity.[4] *See* I.R.C. § 1501. Using this method, Cooper Industries was able to deduct the net operating losses generated by the Rig Companies from its federal taxable income during the years at issue. *See* Treas. Reg. §§ 1.1502–2, –21.[5] In order to accurately reflect this tax benefit, however, Cooper Industries was required simultaneously to reduce its bases in the subsidiaries in the

1. Petitioners are all out-of-state companies with home offices in Texas. Cooper Industries is an Ohio corporation, headquartered in Texas, and licensed to conduct business in Indiana. Stip. at 2. According to their Indiana corporate tax returns, Cooper Turbocompressor and Cooper Power Systems were incorporated in Delaware and are commercially domiciled in Texas. Exs. H, I, J. The Department's audit reports show that Cooper CPS and McGraw Edison also have Texas addresses. Exs. M, N.

2. The Indiana Code states that "[i]f the allocation and apportionment provisions of [article 3] do not fairly represent the taxpayer's income derived from sources within the state of Indiana, the taxpayer may petition for or the department may require ... the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income," Ind. Code Ann. § 6–3–2–2(*l*) (West 1989), including the "combined" filing method, Ind.Code Ann. § 6–3–2–2(p), (q) (West 1989). The General Assembly has not provided any further guidance to the Department in preparing combined returns. The Code merely defines a "combined income tax return" as "any income tax return on which one (1) or more taxpayers report income, deductions, and credits on a combined basis with one (1) or more entities." Ind.Code Ann. § 6–3–1–28 (West 1989).

3. Indiana also permits qualified taxpayers to file consolidated returns. *See* Ind.Code Ann. § 6–3–4–14 (West 1989); Ind. Admin. Code tit. 45, §§ 3.1–1–110 to 3.1–1–112 (1988). In fact, several of Petitioners' IT–20 forms were marked both "consolidated" and "combined." *See* exs. B, F, J. The Department has conceded, however, that "[Petitioners] did not make an election to file a consolidated return in Indiana under Ind. Code § 6–3–4–14 for any of the taxable years 1982 through 1988." Stip. at 2–3.

4. For example, a parent corporation and its subsidiary constitute an affiliated group where the parent owns at least 80 percent of the total voting power and at least 80 percent of the total value of the stock of the subsidiary. *See* I.R.C. § 1504(a); *see generally* William L. Goldman, Tax Management Multistate Tax Portfolios, Income Taxes: Consolidated Returns and Combined Reporting 1130:0001 (BNA 1994); 1 Multistate Corporate Income Tax Guide, All States–Combined Reports–Returns ¶ 1601 (CCH 1993).

5. The regulations governing consolidated returns were amended effective January 1, 1995. T.D. 8560, 59 Fed.Reg. 41666 (1994). Citations in this opinion are to the regulations in effect in 1988.

amount of losses claimed. *See* Treas. Reg. § 1.1502–32. Eventually, the bases were reduced to zero, and Cooper Industries was then required to record the losses in what are termed "excess loss accounts." *See* Treas. Reg. § 1.1502–32(e). Pursuant to Treas. Reg. § 1.1502–19(a)(1), when Cooper Industries sold the Rig Companies in 1988, the amounts in the associated excess loss accounts were included in its federal taxable income for that year.[6] Stip. at 7–8.[7]

In 1993, the Department audited Petitioners for the taxable years 1987 and 1988. During the audit, Cooper Industries asked to exclude the amounts representing excess loss recapture from its 1988 Indiana adjusted gross income. On July 2, 1993, the Department issued its audit reports, disallowing the exclusion, ex. K,[8] and Petitioners timely protested the Department's proposed assessments on October 18, 1993, ex. S. On February 23, 1994, an administrative hearing was held in which the protests were consolidated, and on March 22, 1994, the Department issued a Letter of Findings denying the protests. Ex. T. Petitioners timely filed their original tax appeal in this Court on June 20, 1994.[9]

## JURISDICTION AND STANDARD OF REVIEW

■ This Court properly has jurisdiction over this appeal pursuant to Ind.Code Ann. § 6–8.1–5–1(g) (West Supp.1996). On appeal, this Court reviews final determinations by the Department *de novo* and is bound neither by the issues presented nor the evidence adduced at the administrative level. *Associated Ins. Cos. v. Department of State Revenue*, 655 N.E.2d 1271, 1272 (Ind. Tax Ct.1995); *see also* Ind.Code Ann. § 6–8.1–5–1(h) (West Supp.1996). In this case, the parties have stipulated to all material facts, leaving only a question of law. The sole question presented is whether Cooper Industries' excess loss accounts constituted adjust-

6. At the time of the sale, the excess loss accounts totaled, $11,264,074 for Petdrill and $15,567,621 for Seadrill. Ex. R. The figure for Petdrill represents the Internal Revenue Service's initial estimate. Cooper Industries disputed this figure, however, and the Department ultimately agreed that Cooper Industries only had to recognize 60% of this amount or $6,758,444. *Id.*

7. The treatment accorded net operating losses is designed to prevent the taxpayer from reaping unjustified tax benefits. In *Wyman–Gordon Co. v. Commissioner*, the United States Tax Court explained:

A primary objective of this "investment adjustment" is to prevent the affiliated group from obtaining a double tax benefit—first, when the group's consolidated income is reduced by the subsidiary's losses, and second, when the stock of the subsidiary is disposed of at a loss or at a reduced gain.

Tax Ct. Rep. (CCH) 3455, 3457, 1987 WL 42564 (T.C. July 30, 1987). The Court went on to explain the use of excess loss accounts as well. The Court stated:

[T]he losses of a subsidiary may be used without limitation within a consolidated Federal income tax return to offset the profits of other members of the affiliated group, even though the losses of the subsidiary exceed the parent's basis in the subsidiary's stock. As a result, the taxable income or loss of the affiliated group may become distorted because losses of the subsidiary used to offset income of the consolidated group may exceed true economic losses (i.e., tax losses of a subsidiary used by the affiliated group may exceed the total cost of the affiliated group's investment in the subsidiary). To compensate in part for this potential distortion, the regulations under the consolidated return provisions of the Code require year-end adjustments to the parent's cost basis of its investment in the stock of a subsidiary where tax losses of the subsidiary are included in the consolidated taxable income of the affiliated group. Secs. 1.1502–19 and 1.1502[-]32. *Id.*

8. The Department also found that three of the Affiliates, Cooper Power Systems, Cooper CPS, and McGraw Edison, had improperly failed to file income tax returns in Indiana. Exs. L, M, N. Petitioners do not challenge this determination.

9. Two other Cooper Industries subsidiaries, Bonrig, Inc. and Bonrig II, Inc., were sold in 1987 and received similar tax treatment from the Department. Stip. at 5, 7. Prior to this appeal, however, the Department conceded that these companies were "foreign operating companies" under Ind.Code Ann. § 6–3–2–2.4 (West 1989) during the years at issue, *id.* at 8, and that the associated excess loss accounts should have been treated as nonbusiness income and allocated outside Indiana, *id.* at 10. Consequently, the parties have agreed that "the question whether Petitioner and the Affiliates were required to include in adjusted gross income and net income the amount of the excess loss accounts recaptured upon the sale of Bonrig, Inc. and Bonrig II, Inc. is not before the Court." *Id.* at 10–11.

ed gross income to Petitioners for the purpose of their 1988 Indiana income taxes.[10]

## DISCUSSION

The Department makes two arguments in support of its decision. First, the Department contends that under Ind.Code Ann. § 6–3–1–3.5(b) (West 1989), Cooper Industries was required to begin calculating its Indiana adjusted gross income with the figure it reported as taxable income on its 1988 federal income tax form. Since Cooper Industries filed a consolidated return, that figure included the excess loss recapture from the sales of Petdrill and Seadrill. The Department maintains that since the Indiana Code does not specifically direct the taxpayer to subtract excess loss account income from its federal taxable income, the excess loss recapture was properly included in Cooper Industries' Indiana tax base. Second, the Department argues that even if Cooper Industries is entitled to go behind the numbers, excess loss income is like income from the sale of stock and, therefore, was properly included in Cooper Industries' federal taxable income as either "[g]ross income derived from business" or "[g]ains derived from dealings in property" under I.R.C. § 61. The Court is not persuaded by either argument.[11]

When faced with a question of statutory interpretation, this Court looks first to the plain language of the statute. Where the language is unambiguous, this Court " 'has no power to construe the statute for the purpose of limiting or extending its operation.' " *F.A. Wilhelm Constr. Co. v. Department of State Revenue*, 586 N.E.2d 953, 955 (Ind.Tax.Ct.1992) (quoting *C & C Oil v. Department of State Revenue*, 570 N.E.2d 1376, 1380 (Ind. Tax Ct.1991)). This Court will, of course, consider the entire statutory framework within which the particular statute or provision operates in order to give effect to "every word and clause therein." *Id.* (quoting *Guinn v. Light*, 558 N.E.2d 821, 823 (Ind.1990)).

## I. INDIANA ADJUSTED GROSS INCOME AND I.R.C. § 63

The Department's argument that the taxpayer must begin calculating its Indiana adjusted gross income with the precise amount the taxpayer reported as taxable income on its federal return misses the mark. The Indiana Code provides that "the term 'adjusted gross income' shall mean .... [i]n the case of corporations, the same as 'taxable income' as defined in Section 63 of the Internal Revenue Code," subject to four adjustments that are not applicable here.[12] Ind.

---

**10.** Petitioners challenge their liability under both the adjusted gross income tax, Ind.Code Ann. chs. 6–3–1 to 6–3–7 (West 1989), and the supplemental net income tax, Ind.Code Ann. §§ 6–3–8–1 to 6–3–8–6 (West 1989). However, because the tax base for the supplemental net income tax is defined in terms of adjusted gross income, Ind. Code Ann. § 6–3–8–2(b) (West 1989), an analysis of the provisions of the adjusted gross income tax is determinative in this case. *See F.A. Wilhelm Constr. Co. v. Department of State Revenue*, 586 N.E.2d 953, 954 (Ind.Tax.Ct.1992); *Department of State Revenue v. Endress & Hauser, Inc.*, 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980).

**11.** At oral argument, Cooper Industries objected to an affidavit filed with the Department's trial brief on August 9, 1995. In the affidavit, Jay E. Grossman, the Deputy Administrator of Tax Policy for the Department, reiterates the Department's legal argument that since Petitioners were required to include excess loss account income on their federal returns and because the Indiana Code provides no specific adjustment for such income, the income must be included in Petitioners' adjusted gross income. Grossman aff. at 2–3. In addition, Grossman avers that "[t]o the best of [his] knowledge and experience the De-

partment has consistently taken the position that the federal taxable income is the starting point for determining Indiana adjusted gross income." *Id.* at 3. This Court agrees with Cooper Industries that the affidavit does not add anything to the Department's case. Grossman's legal arguments merely parrot those presented in the Department's brief, and the Department's past practice "is accorded no weight if it is incorrect." *Associated Ins.*, 655 N.E.2d at 1273 n. 5. The Court, therefore, sustains the objection and orders the affidavit stricken.

**12.** The four adjustments are as follows. First, the taxpayer must "[s]ubtract income that is exempt from taxation under [the Adjusted Gross Income Tax Act of 1963] by the Constitution and statutes of the United States." Ind.Code Ann. § 6–3–1–3.5(b)(1). Second, the taxpayer must "[a]dd an amount equal to any deduction or deductions allowed or allowable pursuant to Section 170 of the Internal Revenue Code." Ind. Code Ann. § 6–3–1–3.5(b)(2). Section 170 of the federal code provides deductions for charitable contributions. I.R.C. § 170. Third, the taxpayer must "[a]dd an amount equal to any deduction or deductions allowed or allowable pursuant to

Code Ann. § 6–3–1–3.5(b). This definition is plain and unambiguous. Indiana adjusted gross income begins with federal taxable income *as defined by* I.R.C. § 63, not *as reported by* the taxpayer. Thus, the issue is not what number appears on line 28 of a taxpayer's federal income tax form 1120 but whether a particular item of income was included in taxable income pursuant to I.R.C. § 63.

This approach is supported by the case law. In *F.A. Wilhelm,* this Court held that if an item of purported income is not included in "taxable income" under I.R.C. § 63, then it is not included in "adjusted gross income" under Ind.Code Ann. § 6–3–1–3.5(b). 586 N.E.2d at 956. In that case, the taxpayer was a subchapter S corporation that had formerly been a subchapter C corporation. *Id.* at 954. Generally speaking, the gains and losses of such a corporation would not be subject to income tax at the corporate level but would instead pass through to the shareholders. *See* I.R.C. §§ 1363, 1366. Under I.R.C. § 1374, however, former subchapter C corporations are subject to a special tax on gains arising prior to its subchapter S election, so called "built-in" gains. 47A C.J.S. Internal Revenue § 337 (1996). In *Wilhelm,* the taxpayer reported its "built-in" gains and paid the § 1374 federal tax but did not report the gains on its Indiana return. 586 N.E.2d at 954. This Court agreed with taxpayer's approach because the "built-in" gains were not included in "taxable income" under I.R.C. § 63 and thus were not included in Indiana adjusted gross income under Ind.Code Ann. § 6–3–1–3.5(b). *Id.* at 956.

The Department attempts to distinguish *Wilhelm* on the grounds that in that case this Court relied in part on the fact that Ind.Code Ann. § 6–3–2–2.8 expressly exempted subchapter S corporations from Indiana tax, "notwithstanding any provision of IC 6–3–1 through IC 6–3–7." 586 N.E.2d at 956. The Department points out that this Court rea-

soned that these "words of exception" demonstrated that the "legislature intended to exempt subchapter S corporations absolutely from the imposition of any tax under the Act regardless of any contrary provision." *Id.* While this Court did find this language persuasive, it held that even absent the exemption, the gains were not taxable because they were not included in federal taxable income under I.R.C. § 63. *Id.*

The Department also mistakenly relies on dicta in *Department of State Revenue v. Endress & Hauser, Inc.,* 404 N.E.2d 1173 (Ind. Ct.App.1980), for the proposition that the taxpayer must begin calculating its Indiana adjusted gross income with precisely the same figure reported as taxable income on its federal return. In that case, the taxpayer was a former Massachusetts corporation that had reincorporated in Indiana. In preparing its federal income tax, the taxpayer carried over its net operating losses for its years in Massachusetts. As a result, the taxpayer's federal taxable income was zero, and it reported no adjusted gross income in Indiana. *Id.* at 1174. The Department conceded the fact that the taxpayer had no taxable income for federal purposes but argued nonetheless that the taxpayer should not have been permitted to deduct net operating losses generated outside Indiana for the purposes of its Indiana return. *Id.* at 1176.

In the course of its opinion, the Court of Appeals made the following statement:

> It seems to us that the plain meaning of the statutory definitions and words, as well as legislative intent, directs corporations to begin the computation of their adjusted gross income for tax purposes under the Adjusted Gross Income Tax Act with the item denoted as "taxable income" on their federal income tax returns followed by the three adjustments provided by statute.

*Id.* at 1175. While this language might suggest that the taxpayer is required to transfer the precise figure reported on its federal

Section 63 of the Internal Revenue Code for taxes based on or measured by income and levied at the state level by any state of the United States or for taxes on property levied by any subdivision of any state of the United States." Ind.Code Ann. § 6–3–1–3.5(b)(3). Finally, the taxpayer must "[s]ubtract an amount equal to the

amount included in the corporation's taxable income under Section 78 of the Internal Revenue Code." Ind.Code Ann. § 6–3–1–3.5(b)(4). Section 78 requires domestic corporations claiming benefits under the foreign tax credit provisions to include dividends from specified foreign corporations in their gross income. I.R.C. § 78.

return to its Indiana return, this was not the question before the Court of Appeals, and the Court did not so hold. The Court of Appeals held only that under Ind.Code Ann. § 6–3–1–3.5(b), a taxpayer's adjusted gross income must be calculated by determining its taxable income under I.R.C. § 63, subject to the specific modifications provided in the statute. Since the Indiana Code did not specifically direct the taxpayer to add back net operating losses, the Court of Appeals declined to read such a provision into the plain language of the statute. *Id.* at 1176.

## II. EXCESS LOSS ACCOUNTS AND I.R.C. § 63

■ The Department's contention that excess loss account income is included in federal taxable income as gain from the sale of stock is also mistaken. As we have seen, under Ind.Code Ann. § 6–3–1–3.5(b), the calculation of Indiana adjusted gross income begins with the taxpayer's federal taxable income under I.R.C. § 63. Section 63(a) defines "taxable income" as "gross income minus the deductions allowed by this chapter (other than the standard deduction)," and under I.R.C. § 61, "gross income" includes *inter alia* "[g]ross income derived from business" and "[g]ains derived from dealings in property." The Department points out that under Treas. Reg. § 1.1502–19(a)(2)(i), excess loss account income is "treated as gain from the sale of stock." Reading these provisions together, the Department contends that excess loss account income is properly included in federal taxable income under

I.R.C. § 63 as either income from business or gains from dealings in property and, therefore, is properly included in Indiana adjusted gross income under Ind.Code Ann. § 6–3–1–3.5(b). The Court is not convinced.

First, the Court notes that the provisions relating to excess loss accounts do not even appear in the same chapter of the Internal Revenue Code with I.R.C. § 63. In the Code, subtitle A relates to "income taxes" generally. Chapter 1 of that subtitle deals with "normal taxes and surtaxes," including, as we have seen, the corporate income tax. *See* I.R.C. §§ 1–1399. It is chapter 6 of subtitle A that provides for consolidated returns. *See* I.R.C. §§ 1501–1564. While not determinative, the distinct treatment of the two provisions in the Code is indicative of their independence from one another.

Second, the regulations governing consolidated returns show that excess loss account income is not included in income by virtue of I.R.C. § 63.[13] In order to determine a taxpayer's "consolidated taxable income" under the regulations, each member of the consolidated group must first calculate its "separate taxable income." Treas. Reg. § 1.1502–11(a). This figure for each member "is computed in accordance with the provisions of the Code covering the determinations of taxable income of separate corporations," subject to sixteen adjustments. Treas. Reg. § 1.1502–12. Among these adjustments is the addition of any income from excess loss accounts. Treas. Reg. § 1.1502–12(f).[14] This

---

**13.** In § 1502, Congress delegated responsibility for promulgating rules for this filing method to the Secretary of the Treasury. That section reads:

> The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

I.R.C. § 1502. Section 1503(a) makes clear that the Secretary's regulations govern the computation of the tax. That subsection states: "In any case in which a consolidated return is made or is

required to be made, the tax shall be determined, computed, assessed, collected, and adjusted in accordance with the regulations under section 1502 prescribed before the last day prescribed by law for the filing of such return." I.R.C. § 1503(a).

**14.** Specifically, Treas. Reg. § 1.1502–12(f) provides that "[a]ny amount included in income under § 1.1502–19 shall be taken into account" in calculating separate taxable income. Section 1.1502–19 provides that "[i]mmediately before the disposition ... of stock of a subsidiary, there shall be included in the income of each member disposing of such stock that member's excess loss account," Treas. Reg. § 1.1502–19(a)(1), and that "the amount included in income ... shall be treated as gain from the sale of stock (that is, as capital gain or ordinary income, as the case may be)," Treas. Reg. § 1.1502–19(a)(2).

is to say that each corporation in the group first determines its individual taxable income under chapter 1 (and I.R.C. § 63) and then specially modifies that figure for the purposes of chapter 6 (including the addition of excess loss account income). The group's "consolidated taxable income" is then determined by adding together the members' separate taxable incomes, subject to seven additional adjustments. Treas. Reg. § 1.1502–11.

It is clear then that excess loss account income is not included in federal taxable income pursuant to I.R.C. § 63 but rather becomes income only as an adjustment to "separate taxable income" under Treas. Reg. § 1.1502–12(f). While excess loss account income is conceptualized under the federal regulations as gain from the sale of stock, these amounts are not included in taxable income by virtue of this categorization. If they were, then Treas. Reg. § 1.1502–12(f) would be superfluous. Inasmuch as excess loss account income is not included in taxable income "as defined in" I.R.C. § 63, such amounts are not included in adjusted gross income under Ind.Code Ann. § 6–3–1–3.5(b).

### III. INDIANA CONSOLIDATED RETURNS

This reading of the statute and regulations receives further support from the fact that when the General Assembly has wanted to incorporate the special federal consolidation provisions of chapter 6 into the Indiana Code, it has said so expressly. Under Ind. Code Ann. § 6–3–4–14 (West 1989), corporations may file consolidated returns in Indiana but only on the condition that the members consent *inter alia* to "all provisions of the consolidated return regulations prescribed pursuant to Section 1502 of the Internal Revenue Code." In addition, the legislature specifically recognized the potential problem of determining the Indiana tax base under this scheme and explained:

> For purposes of IC 6–3–1–3.5(b), the determination of "taxable income," as defined in Section 63 of the Internal Revenue Code, of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, shall be determined pursuant to the regulations prescribed under Section 1502 of the Internal Revenue Code.

Ind.Code Ann. § 6–3–4–14(c). Had the legislature desired similar treatment accorded to combined filings, it would have stated as much. The Indiana Code, however, provides no special exemption from Ind.Code Ann. § 6–3–1–3.5(b) for combined filings. This Court will not supply missing terms to an otherwise plain and unambiguous statute.

### IV. A PARADE OF NOT-SO-HORRIBLES

Finally, the Department contends that if this Court holds for Petitioners, "there would be a complete failure to adhere to the strict statutory formula which in turn would permit the taxpayer to make other adjustments based on the same reasoning." Br. at 10. The Department argues further that such a holding would lead to the "absurd result" that every affiliated group filing a combined return in the future would have "to recompute or develop a separate 'taxable income' for Indiana purposes." *Id.* at 11. The Court is not convinced by these arguments.

First, as the foregoing discussion shows, adhering to the "strict statutory formula" in this case means that excess loss account income is not included in Indiana adjusted gross income under Ind.Code Ann. § 6–3–1–3.5(b). Second, if by "other adjustments," the Department means that it may no longer require corporate taxpayers to report their federal consolidated taxable income as the starting point for a combined Indiana filing, then the Department is correct. Third, this Court finds nothing "absurd" in requiring a separate Indiana income computation for combined returns. There is no precise federal analogue to the state combined filing. In light of the fact that the two reporting methods have different purposes and involve different considerations, the legislature's refusal to permit wholesale borrowing from the federal code is understandable.

## CONCLUSION

Given the plain and unambiguous statutory language, this Court holds that excess loss account income is not included in adjusted gross income for the purposes of Ind.Code Ann. § 6–3–1–3.5(b) or net income for the purposes of Ind.Code Ann. § 6–3–8–2(b). To the extent the Department believes this result to be poor tax policy, it should address that argument to the General Assembly. The Court therefore holds in favor of Petitioners and against the Department and orders Petitioners to pay and the Department to refund the amounts to which the parties stipulated in the event of this outcome. Stip. at 11–12.