**INDIANA DEPARTMENT OF REVENUE, Appellant (Respondent below),**

v.

**1 STOP AUTO SALES, INC., Appellee (Petitioner below).**

No. 49S10–0308–TA–358.

Supreme Court of Indiana.

June 22, 2004.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

B. Keith Shake, Indianapolis, IN, Attorney for Appellee.

## ON PETITION FOR REVIEW FROM THE INDIANA TAX COURT

SULLIVAN, Justice.

The Tax Court held that 1 Stop Auto Sales, Inc., an auto dealership that financed its customers' purchases, was not required to reduce the amount of its bad debt deduction by the value of repossessed collateral when calculating its sales tax liability. We reverse the Tax Court's decision, finding that the Legislature intended that only the net debt that is unable to be collected may be deducted for these purposes.

### Background

1 Stop is an automobile dealership that sells vehicles on what it describes as a buy-here, pay-here basis. That is, customers may purchase a vehicle on an installment contract with no money down. Under this financing arrangement, 1 Stop loans its customers not only the entire

amount of the purchase price of the vehicle but the sales tax due on the vehicle as well.

For purposes of Indiana sales tax law, 1 Stop is a retail merchant. Ind.Code §§ 6–2.5–1–8 & 6–2.5–4–2. The regulations of the Indiana Department of Revenue require retail merchants to file the prescribed returns and make tax payments for each month (or other reporting period) within 30 days after the last day of the reporting period. 45 Ind. Admin. Code 2.2–6–1. To determine sales tax liability for a particular reporting period, a retail merchant multiplies the retail merchant's total gross retail income from taxable transactions made during the reporting period by the sales tax rate. 45 Ind. Admin. Code 2.2–6–8. Among the adjustments permitted in calculating a retail merchant's sales tax liability is one for bad debts or uncollectible receivables. The Legislature has provided:

> In determining the amount of state gross retail and use taxes which he must remit ..., a retail merchant shall deduct from his gross retail income from retail transactions made during a particular reporting period, an amount equal to his receivables which:
>
> (1) Resulted from retail transactions in which the retail merchant did not collect the state gross retail or use tax from the purchaser;
>
> (2) Resulted from retail transactions on which the retail merchant has previously paid the state gross retail or use tax liability to the department; and
>
> (3) *Were written off as an uncollectible debt for federal tax purposes during the particular reporting period.* ·

Ind.Code § 6–2.5–6–9(a) (emphasis supplied).[1] The Revenue Department regulation implementing this statute provides:

> (a) In determining the taxpayer's sales and use tax liability ..., a retail merchant shall deduct from his gross retail income from retail transactions made during a particular reporting period, the retail merchant's bad debts or uncollectible receivables.
>
> (b) In order to qualify for this exemption the retail merchant must have:
>
> (1) Previously reported the transaction and remitted the sales or use tax to the Department;
>
> (2) Not collected the tax from the customer; and
>
> (3) *Written the receivable off for federal income tax purposes.*

45 Ind. Admin. Code 2.2–6–12 (emphasis supplied).

This case is about the written off ... for federal tax purposes clause in the foregoing statute and regulation. More precisely, the question is whether a retail merchant is entitled to deduct *the total amount* of any receivable that constitutes an uncollectible debt for federal tax purposes or only to deduct that *portion of the amount* of the receivable equal to the amount actually written off for federal income tax purposes.

In October, 1996, the Revenue Department noticed that 1 Stop was reducing its current month taxable sales by the total amount of prior bad debts. On August 4, 1997, the Department sent 1 Stop a letter notifying the corporation that it would be audited for the years January 31, 1994 through December 31, 1996. On August 5, 1997, 1 Stop filed an amended federal income tax return for the 1993–1995 tax

---

**1.** Substantial amendments were made to this section by the Legislature in 2003, including provisions directly addressing the issues raised by this litigation. P.L. 257–2003, § 30, effective January 1, 2004. We express no opinion about the statute as amended.

years. As a result of the audit, the Department assessed 1 Stop for an additional sales tax in the amount of $131,625.94 plus interest of $3,407.84. 1 Stop paid the assessment and then filed claims of refund of sales tax for the years 1993 to 1997.

On June 10, 1998, the Department denied 1 Stop's claims. 1 Stop then initiated an original tax appeal on which the Tax Court held a hearing. On December 2, 2002, the Tax court held that 1 Stop was entitled to a bad debt deduction from the total amount of its retail sales for purposes of calculating sales tax due to be remitted to the Department; and that amount of the deduction to which 1 Stop was entitled was equal to that portion of the amount of uncollectible receivables equal to the amount written off for federal income tax purposes. *1 Stop Auto Sales, Inc. v. Ind. Dep't of State Revenue*, 779 N.E.2d 614 (Ind.Tax Ct.2002)

1 Stop sought rehearing of the Tax court's decision. On March 31, 2003, the Tax Court reversed itself and held that 1 Stop may deduct an amount equal, in part, to the amount of its uncollectible Indiana receivables it removed from its books as a loss for federal tax purposes, not merely the amount it deducted as federal bad debt. *1 Stop Auto Sales, Inc. v. Indiana Dep't of Revenue*, 785 N.E.2d 672, 674 (Ind.Tax 2003) (op. on reh'g).

We granted review and now reverse the Tax Court's opinion on rehearing.

### Discussion

■ As discussed above, this case requires us to decide whether 1 Stop was entitled to deduct *the total amount* of its receivables that constituted uncollectible

debts for federal tax purposes or only to a deduction equal to that *portion of the amount* of its receivables equal to the amount actually written off for federal income tax purposes.

The parties only discuss the impact of repossessed collateral on these calculations.[2] That is, when a customer fails to repay its obligations to 1 Stop and 1 Stop writes off the loan as uncollectible, the I.R.S. requires 1 Stop, in calculating the federal income tax deduction to which it is entitled, to reduce the amount written off by the value of any repossessed collateral. Treas. Reg. § 1.166–2(a) (as amended in 1993); *Riss v. Comm'r*, 478 F.2d 1160 (8th Cir.1973); *C.I.R. v. Commercial Casualty Ins. Co.*, 131 F.2d 222, Standard Federal Tax Reporter (CCH) ¶ 10,650.623 (3rd Cir. 1942). 1 Stop argues that, in calculating the deduction from gross retail income, it should not be required for Indiana sales tax purposes to reduce the amount written off by the value of any repossessed collateral. As noted, the Tax Court on rehearing agreed.

The Tax Court's reasoning on this point is terse:

The plain language of Ind.Code § 6–2.5–6–9(a)(3) allows 1 Stop to deduct the amount of its uncollectible Indiana receivables that were *"written off* as an uncollectible debt for federal tax purposes during the particular reporting period." Ind.Code § 6–2.5–6–9(a)(3) (emphasis added). Thus, for the purposes of Indiana's Bad Debt statute, 1 Stop may deduct an amount equal, in part, to the amount of its uncollectible Indiana receivables it removed from its books as

**2.** There may be other factors in addition to repossessed collateral that could affect this calculation such as financing charges or interest; sales or use taxes charged on the purchase price; uncollectible amounts on property that remain in the possession of the seller

until the full purchase price is paid; and expenses incurred in attempting to collect any debt. *See* Ind.Code § 6–2.5–6–9 as amended by P.L. 257–2003, § 30. The parties do not call our attention to any such factors and we express no opinion with respect to them.

a loss for federal tax purposes, not merely the amount it deducted as federal bad debt.

*1 Stop,* 785 N.E.2d at 674. 1 Stop itself gives us a more extended argument:

> Under statute *the amount of the deduction* equals *the amount of the receivable.* Element 3 of the deduction (referencing "for federal tax purposes") is an eligibility criteria that made the receivable deductible. The "equal to" language applies to the receivables", not to "for federal tax purposes". Nothing in the sales tax statute suggests that the Indiana Legislature intended to incorporate Internal Revenue Code Section 166 mathematics into the calculation. Further, given that the Indiana sales tax is a gross tax, not a net tax, it would be illogical to apply the federal rules for determining the amount of bad debt deduction to a sales tax deduction. Stated another way, the reference to "federal tax purposes" is a qualifier, not a quantifier.

Appellee's Br. in Resp. to Pet. for Review at 2 (emphasis in original). 1 Stop goes on to give a policy justification for this interpretation:

> The Legislature made the policy decision that when a retail merchant pays the sales tax for customer, i.e., the retail merchant loans not only the amount of the purchase but also the sales tax on the purchase, in a customer fails in repayment, the retail merchant should recover from the Department the amount of sales tax that the customer did not pay. To accomplish this goal, the retail merchant must be able to deduct the entire amount of the "receivable" that became uncollectible. By deducting the entire amount of the receivable, the retail merchant will receive a credit in the amount of 5% of that receivable. In this fashion he recovers the amount of sales tax that he was unable to collect from its customer.

*Id.* at 3.

While we appreciate 1 Stop's argument, we are unable to agree with either its reading of the statute or the intent it attributes to the Legislature.

If the Legislature did not want the Department to use Internal Revenue Code Section 166 mathematics to calculate the amount of the deduction, we believe it would not have referenced federal tax law at all; it would have simply provided that the receivables were written off as an uncollectible debt. Indeed, the Tax Court itself took a similar approach to the benefit of the appealing taxpayer in *Cooper Indus. v. Indiana Dep't of State Revenue,* 673 N.E.2d 1209, 1213 (Ind.TaxCt.1996) [3]

■ To the extent that there is ambiguity on this point, *i.e.,* whether the Section 166 reference is only a qualifier or both a qualifier and a quantifier, ambiguous exemption statutes are to be strictly construed against the taxpayer. *General Motors Corp. v. Indiana Dep't of State Revenue,* 578 N.E.2d 399, 404 (Ind.TaxCt.1991), *aff'd* 599 N.E.2d 588 (Ind. 1992). We also note that this statutory provision has been on the books since 1980 and the regulation since 1982. The Reve-

---

**3.** In *Cooper Indus.,* the Revenue Department argued that a corporate taxpayer must begin calculating its Indiana adjusted gross income with the total amount the taxpayer reported as taxable income on its federal return. The statute provided that "the term 'adjusted gross income' shall mean .... in the case of corporations, the same as 'taxable income' as defined in Section 63 of the Internal Revenue Code." Ind.Code § 6–3–1–3.5. The Tax Court held that the Department was required to calculate taxable income in accordance with Section 63—to use Internal Revenue Code Section 63 mathematics. 673 N.E.2d at 1212.

nue Department advises us that it has consistently upheld the interpretation that a company's bad debt deduction is limited to the amount deducted as federal bad debt. Pet. for Review at 5. Where the meaning of a regulation is in question, the interpretation of the relevant administrative agency should have great weight unless this interpretation would be inconsistent with the regulation itself. *Indiana Dep't of State Revenue v. Bulkmatic Transp. Co.*, 648 N.E.2d 1156, 1158 (Ind. 1995).

As to the policy argument 1 Stop advances, we are unable to discern legislative intent to provide assistance for retail merchants who lend the amount of sales tax on transactions to their customers and are not repaid. The language of the statute indicates to us that the Legislature intended retail merchants like 1 Stop to be entitled to a bad debt deduction but that that deduction be limited to an amount not greater than the debt that was unable to be collected.

Finally, we are also attracted to the Revenue Department's argument that, wholly independent of the debate over the reference to Section 166, conventional legal, accounting, and tax parlance considers an "uncollectible debt" or "bad debt" to be the net debt that is unable to be collected or the actual total loss suffered. As such, the value of repossessed collateral should be taken into account in calculating the deduction for "uncollectible debt" that has been "written off," irrespective of the reference to Section 166.

## Conclusion

We hold that the bad debt deduction for which 1 Stop was entitled was limited to that portion of the amount of its receivables equal to the amount written off for federal income tax purposes. The judgment of the Tax Court is reversed.

SHEPARD, C.J., DICKSON, and BOEHM, JJ., concur.

RUCKER, J., concurs in result.