Filed Sept. 16, 1886.

---

No. 12,279.

## Stout *v.* The Board of Commissioners of Grant County.

County Commissioners.—*Pleading.*—*Practice.*—No formal pleadings are required in the presentation of a claim against a board of county commissioners. It is only necessary to file a written statement or account giving the nature of the claim, and so identifying it as to bar another proceeding upon it.

Same.—*Formal Pleadings.*—But where the parties elect to file formal pleadings and to form issues of law upon the facts contained in any of such pleadings, the sufficiency of the facts thus pleaded may be ruled upon as in other cases.

Statute.—*Construction.*—*Legislative Intention.*—In construing a statute the probable intention of the Legislature must be kept constantly in view.

Same.—*When Intention Governs Letter.*—The legislative intention, as collected from an examination of a statute, will prevail over the literal import of particular terms, and the strict letter of the statute, when an adherence to the letter would lead to injustice, absurdity, or contradictory provisions.

Stout *v.* The Board of Commissioners of Grant County.

SAME.— *Uncertainty.—Legislative History.*—Where a statute is of uncertain meaning, by reason of obscurity in its phraseology, a recurrence to the circumstances under which it was passed may be had to ascertain the probable intention of the Legislature in enacting it, and to that end the legislative history of the statute may be inquired into.

SAME.—*Contemporaneous Legislation.*—In case of doubt or uncertainty, acts in *pari materia*, passed either before or after and whether in force or not, and contemporaneous legislation, not precisely *in pari materia*, may be referred to in order to discern the intent of the Legislature in the use of particular terms, or in the enactment of particular provisions.

SAME.—*History of Country.—Judicial Notice.*—The history of a country, its topography and general condition are elements which enter into the construction of the laws made to govern it, and are matters of which the courts will take judicial notice.

SAME.—*Fees and Salaries.—Public Sentiment.—Judicial Notice of.*—It is an historical fact, of which the courts will take judicial notice, that when the Legislature of 1879 met, and for several years previously, there was a strong public sentiment in favor of the reduction of the fees and salaries of public officers, which constituted an important factor in the preceding general election, and this circumstance may be considered in ascertaining the legislative intent in the enactment of the statute of that year on the subject of fees and salaries.

SAME.—*Act of 1879.—Compensation of County Auditor.—Cases Adhered to.— Stare Decisis.*—Under section 22 of the act of March 31st, 1879 (R. S. 1881, section 5907), concerning fees and salaries, a county auditor, in addition to his fixed salary, is entitled to $125 per year for each one thousand inhabitants of his county over fifteen thousand and not more than twenty thousand, and $100 for each one thousand inhabitants in excess of twenty thousand, and not to $225 per year for each one thousand inhabitants in excess of twenty thousand. *Edger* v. *Board, etc.*, 70 Ind. 331, and *Parker* v. *Board, etc.*, 84 Ind. 340, are adhered to and the doctrine of *stare decisis* applied.

From the Grant Circuit Court.

*R. W. Bailey, J. R. Coffroth, T. A. Stuart, J. S. Frazer, O. B. Hord, A. W. Hendricks, A. Baker, E. Daniels, W. H. Calkins, W. F. Elliott, J. H. Baker* and *F. E. Baker,* for appellant.

*A. Steele* and *R. T. St. John,* for appellee.

NIBLACK, J.—The appellant, Joseph W. Stout, presented a claim against the county of Grant to the board of commissioners of that county, at its March term, 1884, for an alleged

balance due him for services as former auditor of such county. The claim was presented in the similitude of a formal complaint, averring that the appellant was auditor of said county of Grant from the 1st day of June, 1880, until the 1st day of November, 1883; that during all that time said county contained a population of twenty-four thousand persons, according to the last census taken by the United States; that the services of the appellant, as such auditor, had amounted to the aggregate sum of $9,652.05, on account of which he had received only the gross sum of $7,943.70, as illustrated by an accompanying bill of particulars; that the board of commissioners, herein above named, had only from time to time allowed the appellant, as a part of his salary, the sum of $100 for each thousand inhabitants in excess of twenty thousand, when he was, as he still is, entitled to receive, under the 22d section of the act of March 31st, 1879 (R. S. 1881, section 5907), concerning fees and salaries, the aggregate amount of $225 per year for each thousand inhabitants so in excess of twenty thousand. Wherefore the appellant demanded an allowance and judgment for $1,708.35, as a balance remaining due and unpaid to him.

The claim thus presented was rejected by the commissioners, whereupon the appellant appealed to the circuit court, where a demurrer was filed and sustained to the complaint, and where a final judgment upon demurrer was rendered against the appellant.

No formal pleadings are required in the presentation of a claim against a board of county commissioners. It is only necessary to file a written statement or account giving the nature of the claim, and so identifying it as to bar another proceeding upon it. *Board, etc., v. Adams*, 76 Ind. 504; *Board, etc., v. Emmerson*, 95 Ind. 579.

But where the parties elect to file formal pleadings upon such a claim, and to form issues of law upon the facts contained in any of such pleadings, the sufficiency of the facts thus pleaded may be ruled upon as in other cases. *Board,*

etc., v. *Ritter*, 90 Ind. 362; *Wright* v. *Board, etc.*, 98 Ind. 108; *Board, etc.*, v. *Murphy*, 100 Ind. 570.

The question intended to be presented, and upon which alone a decision is invoked, in this case, is the same as the one involved in the cases of *Edger* v. *Board, etc.*, 70 Ind. 331, and *Parker* v. *Board, etc.*, 84 Ind. 340, and that is, to what annual compensation is a county auditor entitled under the 22d section of the act of March 31st, 1879, above referred to, for each one thousand inhabitants, where the population of his county, as shown by the last census, exceeds twenty thousand? The section in question reads as follows:

" Section 22. The auditor of each county shall be allowed the sum of twelve hundred dollars per year for his services, and no more, except as provided for in this act.   When the population of his county exceeds fifteen thousand, as shown by the last preceding census taken by the United States, the additional sum of one hundred and twenty-five dollars for each one thousand inhabitants in excess of fifteen thousand ·shall be allowed said auditor in *addition* to his salary of twelve hundred dollars; and if the population of said county shall be more than twenty thousand, said auditor shall be allowed the *additional* sum of one hundred dollars for each one thousand inhabitants in excess of twenty thousand in said county.   Each auditor shall be allowed one hundred dollars per year for making all reports, required by law, to the auditor of State.   Such allowance shall be made in quarterly instalments by the board of county commissioners during their regular sessions in March, June, September and December, and paid out of any county revenue of such county not otherwise appropriated; but payment shall not be made in advance of services rendered."

In the cases named, this court construed this section of the statute to mean that a county auditor was entitled to receive only an annual compensation of $100 for each one thousand inhabitants in excess of twenty thousand, and hence counsel for the appellant concede that, so far, the weight of authority

in this court is heavily against the more liberal construction of the section they are now seeking to obtain. It is nevertheless most earnestly, but respectfully, contended that the construction given as above was not a well considered construction, but was, and still is, a construction placed upon a statute in palpable disregard of long established rules for the government of courts in such and similar cases, and for that reason we are asked to reconsider the question now again presented, and to adopt a different and, so-called, more liberal construction in favor of county auditors.

It is true, as contended, that in construing a statute the probable intention of the Legislature must be kept constantly in view, and that where the language of the statute is plain and unambiguous, the expressed intention of the Legislature must prevail, there being then no room left for construction. *Case* v. *Wildridge*, 4 Ind. 51; Buskirk Pr. 353; *Taylor* v. *Board, etc.*, 67 Ind. 383; *United States* v. *Fisher*, 2 Cranch, 358, 399; 1 Kent Com., pp. 460–468.

It is also true that the courts can not extend the plain meaning of a statute by the substitution, or addition, of words or phrases, without encroaching upon the legislative department of the government. *Trustees, etc.*, v. *Ellis*, 38 Ind. 3. But the legislative intention, as collected from an examination of the whole, as well as the separate parts, of a statute, will prevail over the literal import of particular terms, and will control the strict letter of the statute, where an adherence to such strict letter would lead to injustice, to absurdity, or to contradictory provisions. *Mayor, etc.*, v. *Weems*, 5 Ind. 547; Buskirk Pr. 353; *Middleton* v. *Greeson*, 106 Ind. 18; *Miller* v. *State, ex rel.*, 106 Ind. 415.

It is likewise true that the certificates of the speaker of the House of Representatives and of the president of the Senate, respectively, that an act has passed both Houses of the General Assembly, are conclusive upon the courts, and hence can not be impeached by the production of facts inconsistent with the truth of such certificates. *Evans* v. *Browne*, 30 Ind. 514;

*Bender* v. *State*, 53 Ind. 254; *Board, etc.,* v. *Burford,* 93 Ind. 383. But where a statute is of doubtful or uncertain meaning, by reason of obscurity in its phraseology, a recurrence to the circumstances under which it was passed may be had with a view of ascertaining the probable intention of the Legislature in enacting it, and to that end the legislative history of the statute may be inquired into. *The Walter A. Wood Mowing, etc., Co.* v. *Caldwell,* 54 Ind. 270 (23 Am. R. 641).

So, in cases of doubt or uncertainty, acts *in pari materia,* passed either before or after, and whether repealed or still in force, may be referred to in order to discern the intent of the Legislature in the use of particular terms, or in the enactment of particular provisions, and, within the reason of the same rule, contemporaneous legislation, not precisely *in pari materia,* may be referred to for the same purpose. *Prather* v. *Jeffersonville, etc., R. R. Co.,* 52 Ind. 16, 32 ; *Douglass* v. *Howland,* 24 Wend. 35, 45; *Taylor* v. *Board, etc., supra;* Bishop Written Laws, sections 75, 76.

The history of a country, its topography, and general condition are elements which enter into the construction of the laws made to govern it, and these are matters of which the courts will take judicial notice. *Williams* v. *State,* 64 Ind. 553 (31 Am. R. 135).

It is a historical fact, and therefore a matter within the common knowledge of all, that at the time of the meeting of the Legislature in 1879, there was, and that for several years previously there had been, a strong public sentiment in favor of a reduction of the fees and salaries of public officers, and that the pressure of that public sentiment had constituted an important factor in the general elections which immediately preceded that meeting of the Legislature. That circumstance, taken in connection with some of the leading as well as minor provisions of the act of March 31st, 1879, justifies the inference that the object in passing that act was a reduction rather than an increase of fees and salaries. The act of March 12th, 1875, which the act under consideration

displaced, gave each county auditor a fixed salary of $1,500, and an additional compensation of $125 for each one thousand inhabitants in excess of fifteen thousand. It also gave each county treasurer a fixed salary of $1,000, with an additional and varying compensation dependent upon the amounts and character of the taxes collected. Whereas, as has been seen, the law now in force allows each county auditor a fixed salary of only $1,200, and makes a new provision for his additional compensation when the population of his county exceeds twenty thousand. As a further examination will disclose, the present law allows each county treasurer a fixed salary of only $800, with an additional allowance of six instead of five per centum upon the amount of delinquent taxes voluntarily paid, which, in many of the counties at least, amounts to a reduction of his aggregate compensation. Other similar illustrations might be given. While the compensation of public officers is in some instances increased, the *trend* of the act now in force is toward a reduction of fees and salaries.

Notwithstanding the contention to the contrary, there is some obsurity in the phraseology of section 22 of the act of 1879, herein above set out. Its proper construction depends upon the antecedent to which the phrase, "the additional sum of $100 for each one thousand inhabitants in excess of twenty thousand," ought to be applied. It is conceded that the sum of $125 allowed for each one thousand inhabitants in excess of fifteen thousand is additional to the fixed salary of $1,200. It is also conceded that the legislative intent was to change the rate of compensation which had theretofore been allowed to a county auditor, in addition to his fixed salary, when the population of his county exceeds twenty thousand.

The fair inference would, therefore, seem to be that, in the absence of an express declaration to the contrary, this changed rate of compensation continues to be, as before, additional to the auditor's fixed salary. This inference is strengthened by the conclusion, already announced, that the evident intent of

the Legislature was to reduce, rather than increase, the aggregate compensation which public officers should be entitled to receive.

We are, consequently, again brought to the conclusion that the phrase, " the additional sum of one hundred dollars for each one thousand inhabitants in excess of twenty thousand," applies to the fixed salary of the county auditor as its antecedent, and that, for that reason, there are now two separate and distinct rates of additional compensation, each additional, and only additional, to the auditor's fixed salary, that is to say, $125 for each one thousand inhabitants over fifteen thousand and not more than twenty thousand, and $100 for each one thousand inhabitants in excess of twenty thousand. Any other conclusion would result, as a matter of the merely literal interpretation of an obscurely constructed, and equivocally connected, sentence of a statute, in a very great, and very unequal and unusual increase in the salaries of a large number of the county auditors of the State, inconsistent with the apparent general policy of the entire statute, and hence presumably at variance with the intention of the Legislature.

It may be, and probably is, true that the present rate of compensation is inadequate in some of the more populous counties, but that circumstance can not be permitted to prevail against the general policy, and fairly expressed will, of the Legislature.

Conceding that this court, as at present constituted, might, as an original question, feel inclined to place a different construction upon the section of the statute involved in this cause, we would, nevertheless, regard the reasons for such a different construction as too shadowy and unsatisfactory, and the lapse of time too great, to justify us in overruling the case of *Edger* v. *Board, etc., supra,* and the later case founded upon it. Three regular sessions of the Legislature, and several extra sessions, have been held since the case of *Edger* v. *Board, etc., supra,* was decided, and nothing has been enacted changing, or in any manner extending, the limit of compensation

prescribed by that case.   It may, therefore, be justly claimed that the Legislature has, for a series of years, acquiesced in the conclusion then reached.   ·A fair case for the application of the doctrine of *stare decisis* is presented.   But were this case now before us as one of first impression, we see no sufficient reason for coming to a conclusion different from that herein above announced.

The judgment is affirmed, with costs.

Howk, C. J., and Elliott, J., did not participate in the decision of this cause.

Filed Sept. 16, 1886.