**CHRYSLER FINANCIAL CO., LLC, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9903–TA–21.

Tax Court of Indiana.

Jan. 25, 2002.

Stephen H. Paul, Janet Madden Charles, Baker & Daniels, Indianapolis, IN, David E. Otero, Peter O. Larsen, Akerman Senterfitt & Edison, Jacksonville, FL, for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent Mirkov, Deputy Attorney General, Indianapolis, IN, for Respondent.

1. Chrysler argues that it is entitled to summary judgment on this issue.

2. The Department raises this issue in its cross motion for summary judgment.

**FISHER, J.**

Chrysler Financial Company, LLC (Chrysler), as successor by merger to Chrysler Financial Corporation, appeals the final determination of the Indiana Department of State Revenue (Department) that denied Chrysler a refund of state gross retail tax (sales tax) pursuant to Indiana's "Bad Debt" statute, Indiana Code Section 6–2.5–6–9. In their cross-motions for summary judgment, the parties raise various issues, which the Court consolidates and restates as:

Whether Chrysler is entitled to a sales tax refund pursuant to the Bad Debt statute.

A. Whether an auto dealership may assign to Chrysler its rights to a sales tax deduction under Indiana's Bad Debt statute;[1]

B. Whether Chrysler as assignee of an auto dealership's installment contracts qualifies for the sales tax deduction under Indiana's Bad Debt statute;[2] and

C. Whether a refund of sales tax on the purchase of motor vehicles is calculated by multiplying the unpaid principal of the bad debt by the sales tax rate.[3]

For the reasons stated below, the Court GRANTS Chrysler's motion for summary judgment and DENIES the Department's cross motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

No material facts are in dispute. Chrysler finances the sale of motor vehicles from Indiana motor vehicle dealers (Dealers) to purchasers of vehicles (Consumers). When a Consumer buys a vehi-

3. The Department also raises this issue in its cross motion for summary judgment.

cle, the Consumer—typically financing its purchase over several years—enters into an installment contract with the Dealer. The amount financed includes the price of the vehicle and the sales tax imposed on the sale. The contracts grant the Dealers a security interest in each vehicle.

In the instant case, immediately after the Dealers and Consumers executed the contracts, the Dealers assigned to Chrysler all rights, title, and interest in the contracts without recourse.[4] As consideration for the assignment, Chrysler paid the Dealers all amounts due under the contracts, including the sales tax. The Dealers then remitted the full amount of sales tax to the Department.

Some Consumers ultimately defaulted on the contracts. When possible, Chrysler repossessed and sold the Consumers' vehicles and applied the proceeds to their delinquent accounts; nevertheless, unpaid balances often remained. After repeated attempts to collect on the defaulted loans, Chrysler wrote the remaining unpaid balances off as uncollectible debts for federal income tax purposes.

On June 18, 1998, Chrysler filed a claim for a refund of sales tax proportional to the sum of unpaid balances in the Consumers' accounts.[5] The Department denied Chrysler's request. Chrysler filed an original tax appeal with this Court on March 17, 1999. Thereafter, the parties filed cross motions for summary judgment. The Court held a hearing on the motions. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

This Court hears appeals from denials of refunds by the Department de novo and is not bound by the evidence or the issues raised at the administrative level. IND. CODE § 6–8.1–9–1(d); *Jack Gray Transport, Inc. v. Dep't of State Revenue,* 744 N.E.2d 1071, 1074 (Ind. Tax Ct.2001), *reh'g granted in part,* 757 N.E.2d 242 (Ind. Tax Ct.2001). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which the Court relies for purposes of the motion show there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross motions for summary judgment do not alter this standard. *White River Envtl. P'ship v. Department of State Revenue,* 694 N.E.2d 1248, 1250 (Ind. Tax Ct.1998).

### Discussion

The issue is whether Chrysler is entitled to a sales tax refund pursuant to the Bad Debt statute. This issue is dependent on the resolution of three sub-issues: (1) whether the Dealers may assign to Chrysler their rights to a sales tax deduction under the Bad Debt statute; (2) if so, whether Chrysler as the assignee qualifies for the sales tax deduction under the Bad Debt statute; and (3) whether a refund of sales tax on the purchase of the motor vehicles is calculated by multiplying the unpaid principal of the bad debt by the sales tax rate. The Court will analyze each sub-issue in turn.

### A. Assignment under Indiana's Bad Debt statute

The first sub-issue is whether the Dealers may assign to Chrysler their stat-

---

**4.** The time period for the assignments at issue is from 1995 through the second quarter of 1997.

**5.** The requested refund totals $388,439. Chrysler calculated this amount by multiplying the unpaid principal—excluding any nontaxable charges—by the 5% Indiana sales tax.

utory right to a sales tax deduction under Indiana's Bad Debt statute.[6] Chrysler contends that because Indiana's Bad Debt statute does not expressly forbid assignment, Indiana common law, which favors assignment, should control. The Department in effect argues that assignment is generally forbidden in this instance because the Legislature did not write the Bad Debt statute to expressly benefit assignees.[7] The Department is incorrect.

A retail merchant must remit the entire amount of sales tax during the reporting period in which a retail sale occurs, even if the price and sales tax are financed over time. See IND.CODE § 6–2.5–6–7; IND. ADMIN. CODE tit. 45, rr. 2.2–6–1, –8 (1996). Indiana's Bad Debt statute allows retail merchants to deduct from their gross retail income an amount equal to any receivables on which a merchant has remitted sales tax to the Department but has not collected the sales tax from the purchaser. See IND.CODE § 6–2.5–6–9(a)(1)–(2). Additionally, the Department routinely grants sales tax refunds to retail merchants. (Answer at ¶ 15.) The Bad Debt statute says nothing, however, about whether a retail merchant may assign its rights to a deduction.

When a statute is silent as to the issue before a court, the court may look to the common law for guidance and interpret the statute in conformity to common law principles. See McKnight v. State, 658 N.E.2d 559, 560 (Ind.1995). Indiana common law recognizes the assignment of contractual rights, statutory rights, and causes of action. See Picadilly, Inc. v. Raikos, 582 N.E.2d 338, 340 (Ind.1991) (finding that contract-based and tort-based choses in action are assignable); Chicago, St. L. & P.R. Co. v. Wolcott, 141 Ind. 267, 39 N.E. 451, 453 (1895) (holding that a statutory right to property damages may be assigned); Brownlee v. Board of Comm'rs of Madison County, 81 Ind. 186, 187–88 (1881) (recognizing the assignability of a promissory note for a property tax refund). Furthermore, the courts presume that the Indiana Legislature understands and acquiesces in the common law of assignment absent a clear expression of contrary intent. See McKnight, 658 N.E.2d at 562; General Motors v. Indiana Dep't of State Revenue, 578 N.E.2d 399, 406 (Ind. Tax Ct.1991), aff'd, 599 N.E.2d 588 (Ind.1992).

As for the assignment of statutory rights, the Indiana Legislature has demonstrated its understanding of the common

---

**6.** IND.CODE § 6–2.5–6–9.

**7.** The Court notes that the Department's cites to "Indiana Department of State Revenue v. Food Marketing Corporation, 403 N.E.2d 1093, 1102 (Ind. Tax Ct. [sic] 1980)," for the proposition that "[t]ax deductions ... are to be strictly construed against the taxpayer" are incorrect for two reasons. (See Resp't Resp. to Pet'r Mot. for Summ. J. at 6, 12.) First, the Court of Appeals, not this Court, handed down the decision in Food Marketing six years before the Tax Court was created. See generally Indiana Dep't of State Revenue v. Food Marketing Corp., 403 N.E.2d 1093 (Ind.Ct. App.1980). Second, the Department's pinpoint cite is to the dissenting opinion in Food Marketing, not to the majority opinion. In

fact, Food Marketing stands for the opposite proposition of the one suggested by the Department. The court in Food Marketing affirmed the trial court's ruling that upheld a retail merchant's broad reading of a deduction under Indiana's Gross Income Tax Act and rejected the Department's narrow reading of the deduction. Food Marketing, 403 N.E.2d at 1096–97. In short, the Department has misstated the holding of case law that appears to cut against its position in the instant case. See Bulkmatic Transp. Co. v. Department of State Revenue, 715 N.E.2d 26, 32 n. 12 (Ind. Tax Ct.1999) (stating "[i]t is hoped that the Department will not repeat its deficient briefing in future cases.").

law by expressly forbidding assignment in numerous instances. *See, e.g.,* Ind.Code §§ 4–30–9–4 ("The authority to act as a retailer [of lottery tickets] is not assignable[.]"); 6–2.5–7–7 ("A permit [to collect prepayment of motor fuel tax] issued under this section is not assignable[.]"); 22–3–2–17(a) ("[N]o claims for [worker's] compensation under IC 22–3–2 through IC 22–3–6 shall be assignable[.]"); 22–3–7–29(b) ("Except as provided in subsection (c), no claims for [worker's occupational disease] compensation under this chapter shall be assignable[.]"); 29–3–7–5(b) ("The interest of [a] protected person in guardianship property is not ... assignable by the protected person."); 32–8–26–3(b)(4) (providing that liens for hospital charges are not assignable); 34–18–16–3 ("A patient's claim for [medical malpractice] compensation under this article is not assignable."). *See also Stout v. Board of Comm'rs of Grant County,* 107 Ind. 343, 8 N.E. 222, 224 (1886) (holding that courts may refer to "contemporaneous legislation not precisely in pari materia"); *Humphries v. Davis,* 100 Ind. 274, 284 (1885) (holding that courts may properly look to other statutes and the rules of the common law to discern a statute's meaning). The absence of an express prohibition of assignment in this instance indicates that the Legislature did not intend to derogate the common law of assignment in Indiana

Code Section 6–2.5–6–9.[8] *See McKnight,* 658 N.E.2d at 562; *General Motors,* 578 N.E.2d at 406; *see also Stout,* 8 N.E. at 224; *Humphries,* 100 Ind. at 284. Accordingly, the Dealers may assign to Chrysler their right to a sales tax deduction under Indiana Code Section 6–2.5–6–9.[9] *Cf.* Ind. Code § 26–1–2–210(2) (providing that "[u]nless otherwise agreed, all rights of either seller or buyer can be assigned"); *First Nat'l Bank of Milltown v. Schrader,* 176 Ind.App. 391, 375 N.E.2d 1124, 1125–26 (1978) (holding that a retail installment contract for purchase of a motor vehicle "represented a transaction in goods" that "may be assigned by either the seller or the buyer," thus, the assignee was the "real party in interest" under Indiana Trial Rule 17).

### B. Chrysler's qualification for a sales tax deduction

■ The next sub-issue is whether Chrysler, as the Dealers' assignee, qualifies for the sales tax deduction under Indiana Code Section 6–2 .5–6–9. In its cross motion for summary judgment, the Department argues that even if Indiana's Bad Debt statute does not forbid assignment, Chrysler does not satisfy the definition of a "retail merchant" under a plain reading of Indiana Code Section 6–2.5–4–1, and therefore Chrysler does not qualify for

---

**8.** The Department claims that no rights are assignable under Indiana Code § 6–2.5–6–9 because "rights which are personal in nature cannot be assigned." (Resp't Mem. in Supp. of Summ. J. at 9.) The Department does not explain *why* it believes that rights under the Bad Debt statute are personal. Consequently, the Court will not analyze the Department's contention. *See Fleet Supply, Inc. v. State Bd. of Tax Comm'rs,* 747 N.E.2d 645, 650 (Ind. Tax Ct.2001) (stating that "[t]he Court will not make [a party's] argument and analysis for it").

**9.** Allowing the assignment of installment contracts in this instance promotes the free exchange of commercial paper. *See Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 341 (Ind. 1991) (stating that "[a]ssignment should be permitted or prohibited based on the effect it will likely have on modern society"). *Cf. Puget Sound Nat'l Bank v. State Dep't of Revenue,* 123 Wash.2d 284, 868 P.2d 127, 131 (1994) (finding that assignment should be permitted under Washington's bad debt statute to "ensure that commercial paper continues to travel freely in the marketplace" and to avoid confusion and uncertainty over "what rights and liabilities transfer in assignment").

the deduction. The Department further argues that only the person who actually paid or owed the sales tax qualifies for the sales tax deduction. Chrysler responds that it qualifies for the deduction as the Dealers' assignee because at common law an assignee "stands in the shoes" of the assignor. Chrysler adds that the Department's argument simply means that the Bad Debt statute is silent as to assignment, in which case common law should control. Chrysler is correct.

 It is a "well-settled principle of contract law that a valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor." *Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind. 1993). In other words, "the assignee stands in the shoes of the assignor." *Id.* Therefore, it does not matter whether Chrysler actually is a retail merchant, or whether it was the person who paid or owed the sales tax; as the assignee, Chrysler stands in the shoes of the Dealers, and the parties do not dispute that the Dealers are retail merchants,[10] or that the sales tax was paid. The Dealers assigned their rights to Chrysler when they executed the contracts. Because Chrysler stands in the Dealers' shoes, Chrysler has a right to the sales tax deduction under the Bad Debt statute. As long as the

requirements of Indiana Code Section 6–2.5–6–9 are met by the Dealers or Chrysler, then Chrysler, as the assignee, qualifies for the sales tax deduction. *See id.*

 Indiana Code Section 6–2.5–6–9(a) provides that a retail merchant may deduct from his gross retail income an amount equal to his receivables that:

(1) resulted from retail transactions in which the retail merchant did not collect the state gross retail or use tax from the purchaser;

(2) resulted from retail transactions on which the retail merchant has previously paid the state gross retail or use tax liability to the department; and

(3) were written off as an uncollectible debt for federal tax purposes during the particular reporting period.

IND.CODE § 6–2.5–6–9(a). The parties agree that the Dealers did not collect the sales tax from the Consumers and that they had previously paid the sales tax to the Department. Furthermore, Chrysler has shown that it has written off the Consumers' uncollectible debts for federal income tax purposes. Accordingly, the Court finds that Chrysler, as the Dealers' assignee, has met the three requirements of Indiana Code Section 6–2.5–6–9(a).[11]

---

**10.** Indiana Code § 6–2.5–4–1(a) states: "A person is a retail merchant making a retail transaction when he engages in selling at retail." IND.CODE § 6–2.5–4–1(a). The Department argues in effect that this definition of "retail merchant" constricts the common law of assignment under the Bad Debt statute by requiring all assignees to be retail merchants. Section 1(a), however, is silent on the issue of assignment. This Court has held that "an implication derived solely from legislative silence is not expandable to the *unmistakable implication* necessary to show the legislature intended the statute to change the common law." *General Motors v. Indiana Dep't of State Revenue*, 578 N.E.2d 399, 406 (Ind. Tax Ct.1991), *aff'd*, 599 N.E.2d 588 (Ind.

1992) (emphasis in original). In this instance, the common law grants *any* assignee the same rights as the assignor. *See Pettit v. Pettit*, 626 N.E.2d 444, 447 (Ind.1993). Thus, Indiana Code § 6–2.5–4–1(a), by its silence on the issue of assignment, does not give rise to the unmistakable implication that the Legislature intended *only* retail merchants be assignees of retail merchants. *See General Motors*, 578 N.E.2d at 406. Accordingly, the Department's argument is without merit.

**11.** The Department also argues that Chrysler does not qualify for the Bad Debt deduction because the Dealers had no bad debt after Chrysler paid them in full for the motor vehicles. The Department's argument merely re-

Thus, Chrysler is entitled to a sales tax deduction under Indiana's Bad Debt statute.[12] *See Pettit,* 626 N.E.2d at 447.

## C. Calculating a refund of sales tax paid on the motor vehicles

■ The final sub-issue is whether a refund of sales tax on the purchase of the motor vehicles should be calculated by multiplying the unpaid principal of the bad debt by the sales tax rate. The Department asserts that this method of calculating a refund contradicts the plain language of the Indiana law that requires all sales taxes to be paid on motor vehicles before the vehicles can be titled. Chrysler, on the other hand, contends that the Department's practice since 1975, as indicated by its final determinations and other agency material, has been to calculate tax refunds in this fashion.

Under Indiana Code Section 6–8.1–9–1(a), "[i]f a person[13] has paid more [state gross retail or use] tax than the person determines is legally due for a particular taxable period, the person may file a claim for a refund with the department." IND. CODE § 6–8.1–9–1(a). The statute is silent, however, as to the method by which the Department may calculate a tax refund. Moreover, the parties cite to no applicable

regulation on this matter, nor does the Court find one.

Chrysler argues that the Department's method of calculating a refund of sales tax may be gleaned from three Department documents: (1) a copy of a 1975 Department Letter of Finding in which the Department held that under the Bad Debt statute,[14] a retail merchant could reduce its gross income subject to sales tax by the amount of any bad debt written off for federal tax purposes; (2) a 1987 Department Audit Division "Intercom"[15] in which a Department employee notes that to determine a retail tax credit for bad debt, "we must apply the sales tax rate only to the unpaid principal of the installment contract," (Pet'r Ex. D Attach. to Pet'r Br. in Opp'n to Resp't Mot. for Summ. J.), and; (3) a 1996 Department Letter of Ruling in which a Department policy analyst and the Deputy Administrator opine that a retail merchant determines its sales tax credit under the Bad Debt law by multiplying the sales tax rate by the amount of unpaid principal of bad debt.[16] In effect, Chrysler concludes from these documents that a refund of sales tax should be calculated by multiplying the unpaid principal of the bad debt by the sales tax rate.

---

states the fact that the Dealers assigned their contracts to Chrysler for consideration that included the amount of the purchase and the sales tax. Thus, the Department's argument suggests nothing more remarkable than the assignor Dealers relinquished all their rights to the assignee Chrysler. *See Pettit,* 626 N.E.2d at 447.

**12.** The parties raise the alternative issue of whether Chrysler qualifies for the Bad Debt deduction because it is a retail merchant required to hold a retail merchant's license under Indiana Code § 6–2.5–8–1. Because the Court has determined Chrysler's eligibility for the Bad Debt deduction on common law grounds of assignment, it need not discuss this alternative issue.

**13.** For the purpose of Article 8.1, a "person" includes an "assignee." IND.CODE § 6–8.1–1–3.

**14.** IND.CODE § 6–2–1–49 (codified as amended at IND.CODE § 6–2.5–6–9).

**15.** The term "Intercom" appears to refer to an internal memorandum.

**16.** Chrysler's second and third examples refer to credits rather than refunds. The Court notes that the Department may first credit excess tax payments against a taxpayer's current tax liabilities, then refund or credit the remaining excess at the taxpayer's request. *See* IND.CODE § 6–8.1–9–2(a).

In response, the Department appears to argue that the State is entitled to the remission *and retention* of *all* sales tax from a purchase, whether or not a purchaser later defaults on its loan. (Oral Argument Tr. at 54–64.) The authority cited by the Department for this proposition is the State's vehicle, watercraft title, and aircraft registration provision at Indiana Code Section 6–2.5–9–6, which provides:

> The state may not title a vehicle or a watercraft or register an aircraft unless the person obtaining the title or registration:
>
> (1) presents proper evidence, prescribed by the department, showing that the state gross retail and use taxes imposed in respect to the vehicle, watercraft, or aircraft have been paid or that the state gross retail and use taxes are inapplicable because of an exemption; or
>
> (2) files the proper form and pays the state gross retail and use taxes imposed in respect to the vehicle, watercraft, or aircraft.

IND.CODE § 6–2.5–9–6. (*See also* Resp't Mem. in Supp. of Mot. for Summ. J. at 10–11 (citing IND.CODE § 6–2.5–9–6).) The Court need not expend energy discussing this authority; Indiana Code Section 6–2.5–9–6 says nothing about whether the State may keep all sales tax paid on bad debt. Thus, the Department's argument is baseless.[17]

Moreover, the Department's understanding of sales tax refunds in this instance renders the Bad Debt statute meaningless. The Bad Debt statute provides tax relief to merchants who have financed the sales tax for installment contract purchases on which consumers later default. *See* I.C. § 6–2.5–6–9. If the State could keep all sales tax from a financed purchase regardless of whether a consumer later defaults on the purchase, then there would be no reason for the Bad Debt statute. This Court presumes that the Legislature did not intend to enact a statute that is meaningless or a nullity. *Indiana Waste Systems of Indiana, Inc. v. Indiana Dep't of State Revenue*, 633 N.E.2d 359, 366 (Ind. Tax Ct.1994). Therefore, the Department's position with regard to sales tax refunds is without merit.

Rather, the Court is persuaded that it would be reasonable to calculate a sales tax refund in this instance by multiplying the unpaid principal of the bad debt by the sales tax rate. Accordingly, the Court GRANTS Chrysler's motion for summary judgment and DENIES the Department's cross motion for summary judgment.

## CONCLUSION

For the reasons stated, the Court GRANTS Chrysler's motion for summary judgment and DENIES the Department's cross motion for summary judgment. The Court REMANDS this case to the Department and ORDERS the Department to

---

17. The Department further argues that a taxpayer seeking the Bad Debt deduction "must *show* that the debt became wholly or partially worthless [for federal income tax purposes] within a taxable year." (Resp't Mem. in Supp. of Mot. for Summ. J. at 11 (citing to 26 U.S.C.S. § 166) (emphasis added).) With regard to federal income taxes, the Bad Debt statute only requires that the bad debt be *deducted* for federal income tax purposes, not that the taxpayer demonstrate the validity of the deduction. IND.CODE § 6–2.5–6–9(a)(3). The parties already stipulate that Chrysler deducted its bad debt for federal income tax purposes. Thus, the Department's suggestion that this Court should scrutinize the validity of Chrysler's federal income tax deduction is without merit.

refund Chrysler the sales tax owed to it.[18]

**18.** The record does not reflect that any of Chrysler's contracts were assigned with recourse. Nevertheless, should the Department determine that such contracts exist, then Chrysler should receive a refund for contracts that were assigned *without* recourse only.

The Court further notes that during the hearing on the motions for summary judgment, Chrysler agreed that if the Department disputed the amount of refund due, then Chrysler would submit to a refund audit to determine the amount owed to it.