**1 STOP AUTO SALES,
INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.**

No. 49T10–9809–TA–108.

Tax Court of Indiana.

Dec. 2, 2002.

B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

1 Stop Auto Sales, Inc. (1 Stop) appeals the final determination of the Indiana Department of State Revenue (Department) denying it a refund of state gross retail tax (sales tax) under Indiana Code Section 6–2.5–6–9, Indiana's "Bad Debt" statute, for the 1993–1997 tax years. The parties raise three issues, which the Court restates as:

I. Whether the Court has jurisdiction over 1 Stop's 1993 refund claim;

II. Whether 1 Stop is entitled to a bad debt deduction pursuant to Indiana Code § 6–2.5–6–9; and

III. Whether a bad debt deduction under Indiana Code § 6–2.5–6–9 must equal the amount of Indiana bad debt written off for federal tax purposes.

For the reasons stated below, the Court DISMISSES 1 Stop's 1993 refund claim for lack of jurisdiction and REMANDS the Department's final determination on 1 Stop's refund claims for the 1994–1997 tax years for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

1 Stop is an Indiana corporation that sells vehicles to the public on a "buy-here-pay-here" basis, which means that purchasers of 1 Stop's vehicles (Consumers) may purchase a vehicle under an installment contract with no money down. When the Consumers opt for this type of financing, 1 Stop does not collect sales tax from the Consumers on the purchase price of the vehicle at the time of the sale. Rather, it loans the sales tax to the Consumers then remits the entire amount of sales tax due to the Department.[1] From

---

1. In turn, when 1 Stop collects payments from the Consumers, it applies a pro-rata share of each payment to cover the sales tax it

time to time, the Consumers default on their contracts with 1 Stop. 1 Stop characterizes the receivables from these contracts as uncollectible, or bad debt.

Prior to October 1996, 1 Stop reported its sales to the Department and remitted, in full, the sales tax due on these retail transactions. Beginning in October 1996, however, 1 Stop's monthly sales tax returns reflected a reduction in its current month taxable sales by the amount of prior bad debts. On August 4, 1997, the Department notified 1 Stop, by letter, that since January 1991, its policy had been "to allow credits to be taken against amounts due *only* for excess [sales tax] payments made or sales overstated in error." (Pet'r Original Tax Appeal at 3 (emphasis in original).) The Department also indicated that it would audit 1 Stop for the years January 1, 1994 through December 31, 1996, and would give it a sales tax credit where appropriate. As a result of its audit, the Department assessed 1 Stop for additional sales tax in the amount of $131,625.94, plus interest of $3,407.84. 1 Stop paid the assessment on January 6, 1998.

Subsequent to receiving its letter from the Department, 1 Stop filed several claims for refund of sales tax: on September 11, 1997, it filed a $22,416.42 refund claim for 1993; on December 31, 1997, it filed refund claims for 1994, 1995, and 1996 in the amounts of $29,021.23, $59,210.76, and $56,180.11, respectively; and on March 9, 1998, it filed a $96,435.96 refund claim for 1997. For each claim, 1 Stop argued that it was entitled to a refund of the sales tax that it had paid on those

receivables that it had written off as bad debt for federal tax purposes.

On June 10, 1998, the Department denied all five of 1 Stop's claims. On September 4, 1998, 1 Stop initiated this original tax appeal. On January 18, 2000, the Court held a trial. On July 6, 2000, the parties presented oral arguments. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

■ This Court hears appeals from denials of refunds by the Department de novo. *Chrysler Financial Co., LLC v. Indiana Dep't of State Revenue*, 761 N.E.2d 909, 911 (Ind.Tax Ct.2002), *review denied*. It is therefore not bound by the evidence or the issues raised at the administrative level. *Id.*

### I. Subject Matter Jurisdiction

■ The first issue is whether the Court has subject matter jurisdiction over 1 Stop's 1993 refund claim. The Department argues that because 1 Stop filed its 1993 refund claim more than three years after the taxes were paid, the Court lacks subject matter jurisdiction. 1 Stop argues, however, that the Department waived the issue of subject matter jurisdiction because it failed to plead the statute of limitations as an affirmative defense in its Answer and Pre-trial Contentions. 1 Stop is incorrect.

■ Subject matter jurisdiction implicates the power of a court to hear and determine the class of cases to which the case before it belongs, and it may not be waived.[2] *UACC Midwest, Inc. v. Indiana*

---

previously remitted to the Department on the sale.

**2.** On the other hand, the issue of this Court's jurisdiction over a particular case may be waived. *See Carroll County Rural Elec. Mem-*

*bership Corp. v. Indiana Dep't of State Revenue,* 733 N.E.2d 44, 47 (Ind.Tax Ct.2000) (distinguishing between subject matter jurisdiction and jurisdiction over a particular case); *Chemco Transport, Inc. v. Conn,* 506

*Dep't of State Revenue,* 629 N.E.2d 1295, 1298 n. 1 (Ind.Tax Ct.1994); *State Bd. of Tax Comm'rs v. Vermillion County Property Owners' Ass'n,* 490 N.E.2d 341, 346 (Ind.Ct.App.1986), *review denied. See also Town Council of New Harmony v. Parker,* 726 N.E.2d 1217, 1223 n. 8 (Ind. 2000) (holding that "[w]here lack of subject matter jurisdiction in the original tribunal is apparent from the record, it is the duty of the reviewing court to raise and determine the issue sua sponte"). Furthermore, the Indiana Legislature has expressly provided that "[i]f a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal." IND.CODE § 33–3–5–11(a). *Cf.* Ind. Tax Court Rule 1 (providing that "nothing ... in the Trial Rules shall be deemed to extend the jurisdiction of the Tax Court with respect to persons, actions, or claims over which it does not otherwise have authority"). Consequently, when seeking a refund of sales tax, a taxpayer must comply with the requirements of Indiana Code Section 6–8.1–9–1, *see UACC Midwest,* 629 N.E.2d at 1298–99, which states:

> (a) If a person has paid more tax than the person determines is legally due for a particular taxable period, the person may file a claim for a refund with the department. [I]n order to obtain the refund, the person must file the claim with the department within three (3) years *after* the latter of the following:
>
> (1) The due date of the return.
>
> (2) The date of payment.
>
> For purposes of this section, the due date for a return filed for the state

gross retail or use tax ... is the end of the calendar year which contains the taxable period for which the return is filed. The claim must set forth the amount of the refund to which the person is entitled and the reasons that the person is entitled to the refund.

IND.CODE § 6–8.1–9–1(a) (1998) (emphasis added).

Accordingly, if 1 Stop wanted a refund of the sales tax it paid *during* 1993, the very latest it could have filed a claim was no later than three years after December 31, 1993 (the latest possible due date of return), or by January 1, 1997.[3] *See* I.C. 6–8.1–9–1(a). 1 Stop, however, did not file a refund claim for sales tax it paid during 1993 until September 1997, nine months past the statutory deadline.

Because 1 Stop did not comply with the statutory requirements of Indiana Code Section 6–8.1–9–1, this Court does not have jurisdiction over its claim. *See UACC Midwest,* 629 N.E.2d at 1298–99; *Evansville Concrete Supply Co., Inc. v. Indiana Dep't of State Revenue,* 571 N.E.2d 1350, 1352 (Ind.Tax Ct.1991). Accordingly, the Court DISMISSES 1 Stop's refund claim for 1993 for lack of jurisdiction.

## II. Bad Debt Deduction

The next issue is whether 1 Stop is entitled to a bad debt deduction pursuant to Indiana Code Section 6–2.5–6–9, which provides that a retail merchant may deduct from its gross retail income an amount equal to its receivables that:

> (1) resulted from retail transactions in which the retail merchant did not collect the state gross retail or use tax from the

---

N.E.2d 1111, 1113–14 (Ind.Ct.App.1987), *vacated in part on other grounds* (distinguishing between subject matter jurisdiction and waiver of jurisdiction of the case).

**3.** 1 Stop does not state the actual date or dates it paid its taxes in 1993, only that it paid them "during 1993." (*See* Pet'r Original Tax Appeal at 3.)

purchaser; (2) resulted from retail transactions on which the retail merchant has previously paid the state gross retail or use tax liability to the department; and (3) were written off as an uncollectible debt for federal tax purposes during the particular reporting period.

*Chrysler Financial,* 761 N.E.2d at 914 (quoting IND.CODE § 6–2.5–6–9(a)) (internal punctuation omitted). 1 Stop argues that it is entitled to a bad debt deduction because it has remitted sales tax on retail sales for which it has not collected sales tax from the Consumers, and it has subsequently written those receivables off as bad debt for federal tax purposes. The Department argues that 1 Stop is estopped from claiming a bad debt deduction for two separate reasons. First, the Department contends that the law prohibits 1 Stop from loaning sales tax to the Consumers because Indiana Code Section 6–2.5–9–4 prohibits retail merchants from assuming or absorbing sales tax on the prices of retail goods.[4] Consequently, the Department argues that 1 Stop cannot claim a bad debt deduction where it has loaned sales tax to the Consumers and not collected it. The Department, however, is incorrect.

■■■ Indiana Code Section 6–2.5–9–4(a)(2) states "[e]xcept as provided in IC 6–2.5–7, a person who: ... offers *to assume or absorb* part of a customer's state gross retail or use tax on a sale ... commits a class B infraction." IND.CODE § 6–2.5–9–4(a)(2) (emphasis added). The Indiana Legislature, however, has not defined the words "assume" or "absorb," therefore this Court must give each word its common and ordinary meaning. *See LDI Mfg. Co., Inc. v. State Bd. of Tax Comm'rs,* 759 N.E.2d 685, 689 (Ind.Tax Ct.2001) (citing IND.CODE § 1–1–4–1(1)); *Tucker v. State,* 646 N.E.2d 972, 975 (Ind. Ct.App.1995). In determining the common and ordinary meaning of a word, this Court may look to the dictionary. *May Dept. Stores Co. v. Indiana Dep't of State Revenue,* 749 N.E.2d 651, 661 (Ind.Tax Ct.2001).

Blacks' Law Dictionary indicates that "to assume" a debt is to take it for or on oneself. *See* BLACK'S LAW DICTIONARY 120 (7th ed.1999) (defining "assume" as "[t]he act of taking (esp. someone else's debt or other obligation) for or on oneself"). Thus, a party who assumes a sales tax takes the obligation of paying the tax for or on himself. *See id.* In other words, a party who assumes a sales tax accepts legal liability for the ultimate payment of the tax. *See id.* Absorption, on the other hand, is where a seller pays certain costs owed by a purchaser, which the seller accounts for prior to quoting the purchaser a price. *See id.* at 8. Hence, a seller who absorbs a sales tax excludes it from the price of the goods sold. *See id.*

■■■ The Court therefore finds that the plain and ordinary meaning of "to assume or absorb" a sales tax is to accept legal liability for the ultimate payment of the tax or to exclude it from the price of the goods sold. *See id* at 8, 120. Thus, a retail merchant does not assume or absorb a sales tax merely by lending it, because lending sales tax neither places legal liability for its ultimate payment on the lender nor excludes it from the price of goods sold. *See id.* Accordingly, Indiana Code Section 6–2.5–9–4(a)(2) does not prohibit a retail merchant from loaning sales tax to a purchaser under a valid installment con-

---

4. In other words, the Department argues that loaning a sales tax is tantamount to assuming or absorbing it.

tract. Consequently, 1 Stop did not assume or absorb any sales tax; it simply loaned sales tax to the Consumers, who bore the legal liability for its ultimate payment by contracting to reimburse 1 Stop. Thus, the Department's first argument is without merit.

■ Next, the Department contends that 1 Stop is estopped from claiming that it did not collect sales tax from the Consumers, which it must show to be entitled to a bad debt deduction under Indiana Code Section 6–2.5–6–9. Specifically, the Department argues that because 1 Stop filed several Form ST–108 Certificates of Gross Retail or Use Tax Paid on the Purchase of Motor Vehicle or Watercraft (Form ST–108),[5] 1 Stop certified that it *had* collected sales tax from the Consumers and cannot now claim that it *did not* collect the sales tax.

The Department's own rule regarding Form ST–108 provides in relevant part that "[i]f the vehicle is purchased from a registered Indiana motor vehicle dealer, the dealer *must collect the tax* and provide the purchaser a completed form ST–108 showing that the tax *has been paid to him* [.]" IND. ADMIN. CODE tit. 45, r. 2.2–3–5(c) (emphasis added). On the other hand, the Legislature has merely provided that "[t]he state may not title a vehicle … unless the person obtaining the title or registration … presents proper evidence, prescribed by the department, showing that the state gross retail and use taxes imposed in respect to the vehicle … *have been paid* [.]" IND.CODE § 6–2.5–9–6(a)(1) (emphasis added). Thus, whereas the plain language of Indiana Code Section 6–2.5–9–6(a)(1) merely requires proof that sales or use taxes have been *remitted,* the Department's rule requires additional proof that sales or use taxes have been *collected* by a registered auto dealer. *See id.*

■ The Department "may not by its rules and regulations add to or detract from the law as enacted[.]" *Johnson County Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 587 (Ind.Tax Ct.1991) (internal quotation marks and citation omitted), *aff'd by* 585 N.E.2d 1336 (Ind.1991). Accordingly, to the extent that the Department's rule requires more than a showing that sales or use taxes have been paid on the purchase price of a vehicle, the Department's rule is invalid. *See Johnson County Farm Bureau Co-op.,* 568 N.E.2d at 587.

■ All that was required of 1 Stop under Indiana Code Section 6–2.5–9–6(a)(1) was to certify that sales tax on the vehicle purchase price had been paid. *See* I.C. § 6–2.5–9–6(a)(1). Because 1 Stop has satisfied this requirement, the Court holds that its certification of the Form ST–108s does not bar it from claiming a bad debt deduction under Indiana Code Section 6–2.5–6–9(a). Moreover, because 1 Stop has remitted sales tax on Indiana receivables subsequently written off for federal tax purposes, it may claim a bad debt deduction under Indiana Code Section 6–2.5–6–9(a).[6] *See Chrysler ·Financial,* 761 N.E.2d at 914–15.

---

**5.** Form ST–108 states: "I hereby certify that … the amount of Gross Retail Sales/Use Tax *was collected from the purchaser.*" (Pet'r Ex. A (emphasis added).) 1 Stop does not deny that it filled out the Form ST–108s for the years in question.

**6.** Were the Court to hold otherwise, it would render Indiana's Bad Debt statute a nullity as to 1 Stop and similarly situated merchants. "This Court presumes that the Legislature did not intend to enact a statute that is meaningless or a nullity." *Chrysler Financial Co., LLC v. Indiana Dep't of State Revenue,* 761 N.E.2d 909, 916 (Ind.Tax Ct.2002), *review denied.*

## III. Determining a Bad Debt deduction

 Having determined that 1 Stop may claim a bad debt deduction under Indiana Code Section 6–2.5–6–9(a) for 1994–1997, the next issue before the Court is the amount of the deduction. 1 Stop argues that a bad debt deduction under Indiana Code Section 6–2.5–6–9 does not necessarily have to equal the amount of bad debt it wrote off for federal tax purposes. Rather, 1 Stop contends that the provisions of the Bad Debt statute only determine a retail merchant's *eligibility* for a bad debt deduction and not the *amount* of the deduction.[7] (*See* Pet'r Post Trial Br. at 6.) The Department, on the other hand, argues that 1 Stop must calculate any sales tax refund in a manner consistent with the way bad debt is calculated for federal tax purposes.[8]

 Indiana Code Section 6–2.5–6–9(a) provides:

(a) In determining the amount of state gross retail and use taxes which he must remit under section 7 of this chapter, a retail merchant shall deduct from his gross retail income from retail transactions made during a particular reporting period, an amount *equal* to his receivables which:

(1) resulted from retail transactions in which the retail merchant did not collect the state gross retail or use tax from the purchaser;

(2) resulted from retail transactions on which the retail merchant has previously paid the state gross retail or use tax liability to the department; and

(3) were written off as an uncollectible debt for federal tax purposes during the particular reporting period.

IND.CODE § 6–2.5–6–9(a) (emphasis added). It is clear from the plain language of Indiana Code Section 6–2.5–6–9(a) that the amount of uncollectible Indiana receivables to be deducted must *equal* the amount of Indiana receivables deducted pursuant to subsection (3). *See* I.C. § 6–2.5–6–9(a). Thus, if a retail merchant has (1) not collected sales tax on the purchases at retail from the purchasers and (2) remitted the sales tax to the Department, then (3) for the purpose of the Indiana Code Section 6–2.5–6–9, the amount of its deduction

---

7. In other words, 1 Stop argues that any retail merchant that writes off a *de minimis* amount of bad debt for federal tax purposes is not limited to deducting that amount under the Bad Debt statute but may deduct a greater amount under an accounting method different from the one by which it calculated its federal bad debt. The Court notes that this issue was not raised in *Chrysler Financial*, which was the first case to deal with Indiana's Bad Debt statute.

8. The Department also suggests that the Court scrutinize whether 1 Stop properly accounted for its bad debt on its federal tax returns. (Resp't Post Trial Br. at 7–8.) "With regard to federal [] taxes, the Bad Debt statute only requires that the bad debt be deducted for federal [] tax purposes, not that the taxpayer

demonstrate the validity of the deduction." *Chrysler Financial*, 761 N.E.2d at 916 n. 17 (citing IND.CODE § 6–2.5–6–9(a)(3)) (emphasis omitted). Thus, the Department's suggestion is without merit. See *id.* In the alternative, the Department argues that because article 3 of the Indiana tax code incorporates by reference the rules of the Internal Revenue Service (IRS), then 1 Stop must look to IRS rules when calculating a deduction under Indiana's Bad Debt statute. (Resp't Post Trial Br. at 13–14 (citing IND.CODE § 6–3–1–17).) However, the sales tax and Bad Debt statutes fall under article 2.5 of the Indiana tax code, and the Department has cited no statute indicating that article 2.5 incorporates IRS rules. Therefore, the Court will not address the Department's argument.

*must equal* the amount of the Indiana receivables it writes off as bad debt for federal tax purposes. *See* I.C. §§ 6–2.5–6–9(a)(1)–(3). Therefore, the Department need only determine the amount of 1 Stop's Indiana receivables that it claimed as bad debt for federal tax purposes to determine the amount of its deduction under the Bad Debt statute.[9] The Court therefore REMANDS the Department's final determination of 1 Stop's claim for a sales tax refund for 1994–1997 to determine the appropriate refund due to 1 Stop.

## CONCLUSION

For the reasons stated, the Court DISMISSES 1 Stop's 1993 claim for a sales tax refund for lack of jurisdiction. The Court REMANDS the Department's final determination on 1 Stop's 1994–1997 sales tax refund claims to determine the appropriate refund due to 1 Stop.

9. The parties argue at length over the intricacies and applicability of various accounting methods. However, the Court need not analyze these arguments to reach the merits of this case. Indiana's sales tax is a listed tax. Ind.Code § 6–8.1–1–1. If the Department has a rule regarding the appropriate accounting method for determining a deduction of taxable receivables under the Bad Debt statute, then the law requires that the Department promulgate that rule pursuant to the notice and hearing provisions of Indiana Code Section 6–8.1–3–3. *See* Ind.Code § 6–8.1–3–3.